No. 23,167.

BESSIE CUSTER, *Appellant and Appellee*, v. B. R. ROYSE, *Appellee
and Appellant.*

### SYLLABUS BY THE COURT.

1. EJECTMENT—*Trial—Verdict—Trial Court Must Either Sustain the Verdict
or Grant a New Trial.* In an action for the recovery of real property, and
for the recovery of damages sustained by its wrongful detention, where the
jury returns a verdict in favor of the plaintiff for the possession of the prop-
erty and for the amount of damages sustained by him by reason of its
wrongful detention, judgment should be rendered on the verdict of the jury
as it is returned; or, if the verdict does not meet the approval of the court,
the verdict should be set aside, and a new trial should be granted.

2. SAME—*Jurisdiction of Court After Verdict.* In such an action as is described
in the first paragraph of this syllabus, it is error for the court to hear addi-
tional evidence and make an additional finding of fact and an additional
order after an appeal has been taken from the judgment entered on the
verdict and a supersedeas bond has been given.

3. SAME—*Taxes Paid Not an Issue in the Case.* In such an action as is de-
scribed in the first paragraph of this syllabus, it is error for the court to
render judgment in favor of the defendant for taxes paid by him where no
issue is made by the pleadings concerning taxes and no evidence is intro-
duced before the jury to show their payment.

4. CONTRACTS—*Evidence—Option Contract.* The option contract was properly
admitted in evidence.

5. SAME—*Letter Shows Acceptance of Option Contract.* The letter set out in
the opinion constituted an acceptance of the option contract for the sale of
real property.

6. SAME—*Sale of Land—Liquidated Damages as a Defense.* A contract for the
sale of real property provided for liquidated damages if the seller should fail
to give good title. He afterward conveyed to another person. In an action
by the contracting purchaser to recover the land and damages for its wrong-
ful detention, the subsequent grantee as defendant cannot set up the pro-
vision for liquidated damages as a defense.

7. EXECUTION—*Wrongful Levy by Sheriff—Execution Creditor Not Liable for
Damages.* An execution creditor is not liable for the act of a sheriff in levy-
ing an execution on property of a stranger to the action and in selling that
property under the execution where the sheriff acts on his own responsibility
without any direction from the execution creditor.

Appeal from Haskell district court; CHARLES E. VANCE, judge. Opinion
filed February 11, 1922. Modified.

*J. W. Davis,* of Greensburg, for appellant Custer.

*Carl Van Riper, L. A. Madison, Albert Watkins,* and *Arthur C. Scates,* all of
Dodge City, for appellant Royse.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover the possession of real property, damages for its wrongful detention, and damages for the wrongful conversion of personal property. Judgment was rendered in favor of the plaintiff for the possession of the land, for $500, damages for its wrongful detention, and for $113.32, damages for the wrongful taking of personal property. Judgment was also rendered that, before the plaintiff should be let into possession of the land she should pay into court, for the benefit of defendant, the sum of $1,722.12, together with interest thereon, of which $76.44 was for taxes on the land paid by the defendant and the remainder was the balance of the price that the plaintiff had agreed to pay for the land. Both sides appeal.

On May 1, 1915, G. L. Baker, then the owner of the land, entered into an optional contract with W. A. Custer, the husband of the plaintiff, which contract contained the following provisions:

"First parties hereby agree to sell said real estate as described in Article 1, for the sum of eighteen hundred dollars ($1800.00), and hereby give second party an option on said real estate for the sum of one dollars ($1.00), and for a term of three months.

"It is also agreed that said one dollars ($1.00) option money shall become a part of the purchase price, provided second party shall make the purchase by or before the expiration of this option, First parties agree to accept payment for same on the following terms: Cash out of which the judgment and taxes are to be paid or any lien against land, and first parties agree that they will deliver a general warranty deed to W. A. Custer of Haskell County, and an abstract showing good and sufficient title, or to any bank named by second parties and that deed shall convey real estate as described in Article 1, subject to incumbrance as named therein, to second party, or that the deed shall be made to any party or parties as may be directed by the second party hereto.

. . . . . . . . . . . . . .

"It is agreed by both parties hereto that the liquidated damages upon failure of first parties to deliver good and sufficient title or otherwise fail in this contract, shall be two hundred dollars ($200.00), and shall be due and payable at the time of such failure or within a reasonable time thereafter. It is understood that time is the essence of this contract."

On June 29, 1915, W. A. Custer wrote G. L. Baker as follows:

"I have sold your land as per your contract to me $1800 net to you. You can have abstract made if you don't have one, but suppose you have one with the mortgage. Advise me as this one could be procured and brought up to date. I am taking contract and will take $200 bonus money which would ½

Custer v. Royse.

come to you if party failes to com cros. Advise me as to abstract and so forth."

On July 5, 1915, G. L. Baker executed and delivered a warranty deed conveying the land to E. O. Luther, who had on July 2, 1915, agreed to sell the land to the defendant. On July 28, 1915, E. O. Luther executed a warranty deed conveying the land to the defendant. On December 16, 1915, G. L. Baker and wife executed and delivered a warranty deed to the plaintiff conveying the land to her. J. A. Kephart was in possession of the land as the tenant of the plaintiff on July 2, 1915, and had been for some time prior thereto and was for a long time thereafter. Neither Luther nor Royse made any inquiry of Kephart or the plaintiff concerning any adverse title or interest in the land. J. A. Kephart, in an action of forcible detention commenced against him and W. A. Custer by the defendant, was dispossessed of the land, and the defendant was put in the possession thereof. Under an execution issued under the judgment in that action, the sheriff levied on and sold the plaintiff's kafir corn and milo maize, then on the land. The action was tried by a jury, which returned two verdicts in favor of the plaintiff, one for the possession of the land and $500, damages for its wrongful detention, and the other for $113.32, damages for the wrongful taking of the personal property. Special questions were answered by the jury, as follows:

"Did the plaintiff Bessie Custer on or about the 19th day of June, 1915, agree with W. A. Custer to purchase said land for $1,800.00 under the terms of said optional contract? Answer, Yes.

"Did plaintiff Bessie Custer pay the sum of $1.00 as part payment for said land? Answer, Yes.

"Did George L. Baker furnish to plaintiff or to W. A. Custer an abstract of title showing good title in himself? Answer, No.

"Was the plaintiff Bessie Custer ready, able and willing to pay the balance of the purchase price at such time as George L. Baker should present her an abstract showing good title in him? Answer, Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Did Mrs. Custer make any improvements on the land after she had agreed to take the land under the option contract in question? Answer, Yes.

"Did E. O. Luther before taking his deed from Baker go to J. A. Kephart or Mrs. Custer and make any inquiry concerning the title or as to what right Kephart was using and occupying the land? Answer, No.

"Did B. R. Royse before purchasing the land from Luther go to J. A. Kephart or Mrs. Custer and make any inquiry in regard to the title or by what right Kephart was occupying the land? Answer, No.

"If Luther and Royse or either of them had gone to the land before purchasing and had made inquiry of J. A. Kephart concerning his occupancy of the land, would they have learned from Kephart that Mrs. Custer claimed to have bought the land under the optional contract? Answer, Yes."

1. The plaintiff argues that "the court erred in refusing to render judgment on the verdict of the jury" and that "the court erred in rendering judgment for a different amount than that fixed by the verdict." The verdicts were rendered November 1, 1919, and judgment was rendered April 6, 1920. The defendant's motion for new trial was overruled February 23, 1920. The plaintiff's complaint is that instead of rendering judgment in accordance with the verdicts, the court added the condition that, before the plaintiff should be let into the possession of the land, she must pay what remained of the purchase price, with interest thereon, and taxes after deducting the damages that she had sustained by reason of the wrongful detention of the property by the defendant and by reason of the wrongful conversion of the personal property taken on execution. On the trial the plaintiff offered to pay the full purchase price for the land whenever she was furnished an abstract showing a merchantable title, and after some discussion of the offer, the plaintiff stated—

"We are tendering $1799.00, less whatever payments have been made, after the judgments have been taken out, after all taxes and costs have been paid and all incumbrances removed. In other words, we are willing to pay and we offer to pay for this land the full purchase price under this option contract whenever we get a title to it, but we refuse to pay it unless this deed to Mr. Luther and Mr. Royse is canceled—removed from the records of Haskell county. We don't intend to pay our money over while those deeds incumber the record to this land."

The tender was not accepted; its conditions were not complied with; but the major part of the judgment seems to have been based on it.

One part of the action was for the recovery of real property and the other part was for the recovery of damages. In both, a jury trial was a matter of right. (Civ. Code, § 279.) There was a jury trial. It was necessary that all the issues made by the pleadings and evidence be submitted to the jury under proper instructions. The jury ascertained the facts, applied to them the instructions given, and returned verdicts accordingly. If those verdicts were supported by evidence, judgment should have been rendered on them.

The plaintiff had not paid for the land; she owed Baker for it; she did not owe the defendant. The warranty deeds from Baker

Custer .v. Royse.

to the defendant did not transfer to him the right to collect the purchase money from the plaintiff if the defendant's title failed on account of the prior rights of the plaintiff. The defendant must look to the warranties contained in the deeds under which he holds for any damages he may sustain by reason of the failure of his title.

The judgment as rendered must be intended to bar Baker from his right to recover the purchase price of the land from the plaintiff. Baker is not a party to the action, and the judgment cannot bind him. His rights and obligations concerning the land cannot be settled in this action because he is not a party to it. It is useless to say that he has no rights against the plaintiff and no obligations to the defendant. Baker has both.

It was error to order the plaintiff to pay the purchase money into court for the benefit of the defendant, and it was error to order that, unless the purchase money was paid into court within fifteen days, the plaintiff's rights to the land should cease and determine. Unqualified judgment for the possession of the land and for damages for its wrongful detention should have been rendered on the verdict therefor.

2. The plaintiff contends that "the court had no power to make additional findings in the case, and tax the costs to the plaintiff, on August 24, 1920, after an appeal had been taken to the Supreme Court." Judgment was rendered April 6, 1920. The appeals were taken April 15, 1920, and were filed in the supreme court on August 27, 1920. On August 24, 1920, after notice to the plaintiff, the defendant presented an application to the judge of the district court asking that the court find that the plaintiff had made default in the payment of the money required to be paid by her under the judgment of April 6, 1920, and asking that the court retax the costs in the action. On that day the court on that application made the following finding and order:

"On motion of deft, court finds that no part of money required to be paid by plaintiff has been paid, but plaintiff filed notice of appeal and supersedeas bond within 15 days from date of judgment. Costs on first cause of action taxed to plaintiff and second cause of action to deft."

No such finding or order should have been made after the appeal was taken and supersedeas bond given.

3. The plaintiff argues that judgment should not have been rendered in favor of the defendant for $76.44, taxes paid on the land. No issue was made by the pleadings and no evidence was submitted

to the jury concerning taxes paid by the defendant. The evidence on that subject was presented to the court, in the absence of the plaintiff, on April 6, 1920, long after the verdicts had been returned and at the time the judgment was finally entered. The plaintiff sought to recover damages for the wrongful detention of the land by the defendant. A verdict in her favor was returned by the jury for the damages sustained by her. If, on the trial, evidence had been introduced concerning the payment of taxes, they might have constituted an offset against such damages; but no such evidence was introduced, and it was improper to consider that matter after the trial was over and the verdict had been returned.

4. The defendant complains of the admission in evidence of the contract between G. L. Baker and W. A. Custer on the ground that it was improper under the pleadings. The defendant's argument is that the plaintiff's title was an equitable one, and the facts on which it was based should have been stated. Section 619 of the code of civil procedure, in part, reads:

"In an action for the recovery of real property it shall be sufficient if the plaintiff states in his petition that he has a legal or equitable estate therein. . . . If his action is based on a legal title it shall not be necessary to state how the plaintiff's estate or ownership is derived. If his claim is based upon an equitable title, he shall state the facts upon which his title is based in his petition."

The plaintiff's petition alleged "that she is the owner and entitled to the immediate possession" of the real property in controversy. The plaintiff did not state that her title was either legal or equitable. She might have been compelled to state that her title was one or the other if her petition had been attacked by motion to make more definite and certain. It was not so attacked. The defendant, by failing to make such an attack, waived his right to complain that the petition did not set out the facts upon which the plaintiff's title was based if her title was an equitable one. (*Mitchell v. Milhoan,* 11 Kan. 617; *Conaway v. Gore,* 24 Kan. 389; *Clay v. Hildebrand Bros. & Jones,* 34 Kan. 694, 704, 9 Pac. 466; *St. L. & S. F. Ry. Co. v. Snaveley,* 47 Kan. 637, 28 Pac. 615; *Smith v. Smith,* 75 Kan. 847, 89 Pac. 896.)

5. The defendant argues that the letter from W. A. Custer to G. L. Baker should not have been admitted in evidence. This argument is based on the ground that the letter did not amount to an acceptance of the offer contained in the contract between G. L. Baker and W. A. Custer. The contract and the letter must be laid

side by side and examined for the purpose of ascertaining whether or not the letter did accept the offer contained in the contract. The contract was an offer to sell the land, not necessarily to W. A. Custer, and to deed to him or to any person to whom Custer might direct. The letter was a notice from Custer to Baker that Custer had sold the land. The defendant's argument might be good but for the provision in the contract that the deed should "be made to any party or parties" as W. A. Custer might direct. This contemplated that Custer might take the land or sell it to someone else. The contract was an offer to sell the land to Custer or to any one that he might select.

This also disposes of the defendant's complaint of the refusal of the court to give a requested instruction that the contract did not give W. A. Custer any right or authority to sell the land to someone else, and likewise disposes of several other matters based on the same facts.

6. The defendant urges that the contract provided for damages in the sum of $200 and that plaintiff's rights are limited to the recovery of that amount if G. L. Baker should fail to give good and sufficient title or otherwise fail in the performance of the contract. That provision of the contract might be available to G. L. Baker in an action by the plaintiff against him for damages. However, that provision would not defeat the plaintiff's right to compel specific performance if the plaintiff should elect to resort to that remedy rather than to an action for damages. The deeds from Baker to Luther and from Luther to Royse did not attempt to assign Baker's right to recover the purchase money under the contract between Baker and the plaintiff. Those deeds attempted to convey the land, not contract rights. If G. L. Baker could not have set up liquidated damages in an action by the plaintiff to compel specific performance, the fact that the contract provided for liquidated damages cannot avail the defendant. The defendant states—

"And in this connection we are free to admit that if W. A. Custer had kept himself in good standing under the option, and had not allowed the agreement to 'cease and determine' by his own default, he could have prevailed over the claims of Royse."

7. The defendant insists that "the court erred in approving the verdict of the jury on the second cause of action." This concerned the kafir corn and milo maize that was taken by the sheriff under

an execution in the forcible detention action. The property belonged to the plaintiff; it was on the land in controversy; the sheriff took the property under execution, whether or not at the direction of the defendant does not appear from the evidence abstracted. The defendant insists that there was no evidence to show that he directed or induced the sheriff to levy on the property, and the abstracts to not show any. 23 C. J. 973 uses the following language:

"When plaintiff places his execution in the hands of an officer for service, he is presumed to intend that no action shall be taken thereunder not authorized by the terms of the writ, and he will not be liable for a wrongful execution of the writ unless he ordered or directed the officer or participated directly or otherwise than by merely suing out the process. But if it is shown that the execution creditor advised, directed, or assisted the commission of the unlawful act, he will be equally liable with the officer for the injury sustained."

The court instructed the jury that—

"In order however to make the defendant liable to the plaintiff for such property seized under said execution it is necessary that he be shown to have directed or induced the sheriff to levy on this particular property."

If there was no evidence to show that the defendant directed the sheriff to levy on that property, the question of damages on account of the sale of it by the sheriff should not have been submitted to the jury. An instruction was requested that the jury be directed to return a verdict in favor of the defendant on that cause of action. That instruction was not given. As the matter is presented to this court, it was error for the trial court to render judgment in favor of the plaintiff for $113.32, damages for the wrongful taking of the personal property. The verdict of the jury for that sum was separate from the verdict for the possession of the real property and the damages for its wrongful detention, and responded to a separate cause of action stated in the petition.

The trial court is directed to render judgment according to the verdict in favor of the plaintiff for the possession of the land and for the damages for its wrongful detention, and to render judgment in favor of the defendant on the cause of action for the wrongful taking of the personal property. No judgment shall be rendered concerning the taxes.